| | | |
|---|---|---|
| United States District Court | | Southern District of Texas |

| | | |
|---|---|---|
| Compass Bank, | § § § § § § § § § § | |
| Plaintiff, | | |
| versus | | Civil Action H-10-107 |
| Randall M. Hall, et al., | | |
| Defendants. | | |

## Opinion on Summary Judgment

1. *Introduction.*

Sonrisa Realty Partners, Ltd., and Sonrisa Properties, Ltd., – collectively, Sonrisa – borrowed $8,200,000 from Texas State Bank. The note was signed by Sonrisa Realty GP, LLC, as the general partner of Sonrisa Realty Partners, Ltd., and by Sonrisa Properties Management, Inc., as the general partner of Sonrisa Properties, Ltd. Randal M. Hall guaranteed the note. Texas State Bank sold the note to Compass Bank. Sonrisa defaulted.

Sonrisa filed for bankruptcy on January 4, 2010. Compass sued Hall, Sonrisa Realty GP, LLC, and Sonrisa Properties Management, Inc., on January 12, 2010.

2. *Compass Holds.*

The defendants say that Compass has not proven that it holds the note. They have produced Sonrisa's title insurance that lists the note on one of its schedules and describes that it was assigned to the Texas State Bank. The policy does not show the note's acquisition by Compass. The defendants say that this policy creates a genuine factual question about who holds it. On its face, this argument is a farce – the purpose of the schedule was to identify encumbrances to the property that would not be covered, regardless of the holder.

In response to this silliness, Compass produced the articles of merger between Texas State Bank and Compass Bank, undisputably showing that Compass is Texas State Bank's successor in interest and the lawful holder of the note.

Worse, the defendants' exhibits include (a) an affidavit by a former Texas State Bank executive swearing that Texas State Bank merged into Compass and (b) e-mail chains between Hall and a Compass vice-president about the defendants' inability to fund the interest carryover if the loan were to be restructured. The defendants' own evidence shows that they knew Compass owned the note. In spite of this they have argued ownership for the sake of delay and confusion.

3.   *Lies and Detriment.*

The defendants say that they expended significant resources relying on Texas State Bank's promise to extend the note, a promise that was inherited and extended by Compass. The problems with this theory – couched as both an affirmative defense and a counterclaim – are that the defendants' actions were for their own benefit and that no promise existed for them to rely on.

Through his companies, Hall owns about 100 acres of land abutting Interstate 45 north of FM 646 in League City. This property is collateral for the note. Hall and League City envision this becoming the medical area for Galveston County.

Hall lobbied the Texas Department of Transportation to reverse the on and off ramps in front of the property so that he could sell part of it to the county for the future Grand Parkway right of way. This would make the property more accessible and thus more valuable. The Department of Transportation approved the ramp reversal, but Compass did not modify the note because it was still not convinced that Sonrisa and Hall could pay.

As the defendants say in their brief, a "reversal of the ramps was in the best interests of all of the parties in this case." It is axiomatic that Sonirsa and Hall could not have detrimentally relied by undertaking successful lobbying for their own benefit – improving the value of their property. The defendants do not quantify their damages in their counterclaim because they have none.

There also was no promise between Sonrisa and Compass that could have been broken. Hall sent a proposed modification to Compass in September of 2008; Compass rejected it. Hall updated Compass about the ramp reversal throughout the spring of 2009, but nothing was ever agreed to. The only clarity shed by the e-mails between Hall and the Compass officer was that Compass was not interested in restructuring the debt without Hall showing that Sonrisa had

more assets to leverage. These e-mails are hardly negotiations; they are status updates and chatter.

The defendants also include an affidavit from James MacIntyre, a former vice president at Texas State Bank. He testified that he told Hall that when the Texas Department of Transportation approved the ramp reversal, the bank would modify the loan consistent with the bank's underwriting standard. This itself was not a promise to modify the loan.

4. *Randall M. Hall.*

Hall unconditionally guaranteed the note. He waived his defenses – the ones already discredited – in the guaranty itself. The note says that the guarantor remains liable even if the borrower has defenses rendering the debt wholly or partially uncollectible.

The guarantee covers the entire debt, including principal, interest, and attorney fees. Hall is liable for $8,725,460.73 in principal and interest through March 24, 2010, and interest accruing at $954.85 daily from March 25, 2010, through the date of judgment.

5. *General Partners.*

A general partner of a limited partnership has the liabilities of a partner. Tex. Bus. Org. Code Ann. § 153.152. Sonrisa Realty GP, LLC, and Sonrisa Property Management, Inc., are jointly and severally liable with Hall for $8,725,460.73 in principal and interest through March 24, 2010, and interest accruing at $954.85 daily from March 25, 2010 through May 28, 2010.

Even though the defenses to the note have been discredited, neither Sonrisa Realty GP, LLC, nor Sonrisa Property Management, Inc., is a maker of the note. Both lack standing to assert defenses or counterclaims. The makers are Sonrisa Realty Partners, Ltd., and Sonrisa Properties, Ltd, who are not parties to the suit. Tellingly, both of the makers have filed bankruptcy and neither included this affirmative defense or counterclaim in their original bankruptcy schedules – schedules signed by Hall. They had a legal obligation to disclose all assets to the bankruptcy court, including counterclaims. They amended their schedules only after Compass moved for summary judgment and one day before the defendants' response was due.

6. *Fees.*

The terms of the contract and Texas law authorize Compass to collect its reasonable fees. Texas Civ. Prac. & Rem. Code § 38.001(8). Compass's reasonable fee will be assessed post-judgment.

7. *Conclusion.*

Sonrisa Realty Partners, Ltd., and Sonrisa Properties, Ltd., defaulted on a note held by Compass Bank. Because the note was signed by Sonrisa Realty GP, LLC, as general partner of Sonrisa Realty Partners, Ltd., and by Sonrisa Properties Management, Inc., as general partner of Sonrisa Properties, Ltd, and unconditionally guaranteed by Randal M. Hall, Sonrisa Realty GP, LLC, Sonrisa Properties Management, Inc., and Randal M. Hall are jointly and severally liable for the debt.

Compass Bank will recover $8,725,460.73, pre-judgment interest accruing at $954.85 daily from March 25, 2010, through May 28, 2010, post-judgment interest at 5%, and reasonable attorney fees from Sonrisa Realty GP, LLC, Sonrisa Properties Management, Inc., and Randal M. Hall, jointly and severally.

Signed on May 28, 2010, at Houston, Texas.

Lynn N. Hughes
United States District Judge